SONIA N. PAGAN *v.* CAREY WIPING MATERIALS CORPORATION ET AL.
(AC 34128)

Beach, Bear and Sheldon, Js.

---

Argued April 18—officially released July 30, 2013

*Jennifer B. Levine*, with whom was *Harvey L. Levine*, for the appellant (plaintiff).

*Michael J. McAuliffe*, for the appellee (defendants).

*Opinion*

SHELDON, J. The sole issue in this appeal is whether the statutory provisions that allow an employer to terminate workers' compensation benefits under General Statutes § 31-296 prior to an evidentiary hearing deprive an injured employee of a protected property interest without due process of law in violation of the fourteenth amendment to the United States constitution[1] and article first, §§ 8[2] and 10,[3] of the constitution of Connecticut. The plaintiff employee, Sonia N. Pagan, appeals from the decision of the workers' compensation review board (board) remanding her case to the workers' compensation commissioner for the sixth district (commissioner) for a formal hearing on the Form 36,[4] requesting permission to discontinue benefits, that had been filed by her employer, the defendant Carey Wiping Materials Corp.,[5]

[1] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[2] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law. . . ."

[3] Article first, § 10, of the constitution of Connecticut provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[4] "A Form 36 is a notice to the compensation commissioner and the claimant of the intention of the employer and its insurer to discontinue compensation payments. The filing of this notice and its approval by the commissioner are required by statute in order properly to discontinue payments. General Statutes §§ 31-296, 31-296a, 31-300." (Internal quotation marks omitted.) *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 321 n.1, 823 A.2d 1223 (2003).

[5] The Hartford Insurance Company, the employer's insurer, is also a defendant. For purposes of simplicity, we refer herein to Carey Wiping Materials Corp. as the defendant.

and which the commissioner had granted after an informal hearing. On appeal, the plaintiff claims that the statutory provisions of § 31-296, by which an employer or insurer can discontinue or reduce workers' compensation benefits, violated her due process rights guaranteed by the federal and state constitutions. Because we conclude that the pretermination procedures of § 31-296 fully comport with the requirements of due process, we affirm the decision of the board.

The record discloses the following relevant facts and procedural history. The plaintiff suffered a compensable back injury on February 22, 2010, for which she received temporary partial disability benefits until October 24, 2011. On the latter date, the defendant filed a Form 36 notice seeking to discontinue the plaintiff's workers' compensation benefits because, according to the plaintiff's treating physician, Dr. Roberto V. Dominguez,[6] the plaintiff had reached maximum medical improvement. At the request of the plaintiff, an informal hearing was held on October 27, 2011. Thereafter, the commissioner approved the discontinuance of the plaintiff's benefits retroactive to October 24, 2011. On the same day that the discontinuance of benefits was approved, the commissioner scheduled a preformal hearing for December 5, 2011,[7] and caused notice of the preformal hearing to be issued to the parties.[8] The

---

[6] The plaintiff contends, however, that Dr. Edward Braun, rather than Dr. Dominguez, was her treating physician.

[7] A preformal hearing may be held when issues "have not been resolved at one or more informal hearings. . . . [T]he Workers' Compensation Commission utilizes [preformal hearings] to facilitate the settlement of claims and preparation of a claim for trial at the Formal hearing." A. Sevarino, Connecticut Workers' Compensation After Reforms (Centennial Ed. 2012) § 10.11, p. 1245; see also *Brown* v. *Dept. of Mental Health & Addiction Services*, No. 4053 CRB 02-99-05 (July 27, 2000), aff'd, 66 Conn. App. 882, 786 A.2d 458 (2001), cert. denied, 259 Conn. 913, 791 A.2d 564 (2002).

[8] Neither the plaintiff nor her attorney attended the December 5, 2011 preformal hearing.

plaintiff, however, sought to bypass the preformal hearing by appealing the commissioner's decision to the board. The board remanded the case to the commissioner for a formal hearing.[9] This appeal followed.

The plaintiff claims that the statutory provisions of § 31-296 deprived her of a protected property interest without due process of law in violation of the fourteenth amendment to the United States constitution and article first, §§ 8 and 10, of the Connecticut constitution.[10] Specifically, the plaintiff argues that the procedure prescribed by § 31-296, which allows an employer to terminate, with the permission of the commissioner, the workers' compensation benefits of an employee prior to an evidentiary hearing, is constitutionally inadequate to protect her interest in receiving workers' compensation benefits. We disagree.

We note at the outset that challenging a statute on constitutional grounds always imposes a difficult burden on the challenger. "We have consistently held that every statute is presumed to be constitutional . . . . [T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it . . . ." (Citations omitted; internal quotation marks omitted.) *Rayhall* v. *Akim Co.*, 263 Conn. 328, 341, 819 A.2d 803 (2003). "[T]he party attacking a validly enacted statute . . . bears the heavy burden of proving its unconstitutionality beyond a reasonable doubt . . . ." (Internal quotation marks omitted.) *Neuhaus* v. *DeCholnoky*, 83 Conn. App. 576, 590,

[9] The board stated, inter alia: "[The commissioner's] ruling was the result of an informal hearing. No record exists. Due process requires an evidentiary hearing wherein a record can be created."

[10] Because the plaintiff does not supply a "state constitutional analysis of [her] claim pursuant to *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), we deem that claim abandoned and analyze the [plaintiff's] . . . arguments under the requirements of the United States constitution." (Internal quotation marks omitted.) *State* v. *Simpson*, 286 Conn. 634, 651 n.17, 945 A.2d 449 (2008).

850 A.2d 1106 (2004), rev'd in part on other grounds, 280 Conn. 190, 905 A.2d 1135 (2006).

"Inquiry into whether particular procedures are constitutionally mandated in a given instance requires adherence to the principle that due process is flexible and calls for such procedural protections as the particular situation demands. . . . There is no per se rule that an evidentiary hearing is required whenever a liberty [or property] interest may be affected. Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." (Internal quotation marks omitted.) *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 24–25, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004).

"Our due process inquiry takes the form of a two part analysis. [W]e must determine whether [the plaintiff] was deprived of a protected interest, and, if so, what process was [she] due." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, 257 Conn. 481, 499, 778 A.2d 33 (2001). In *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 102 S. Ct. 1148, 71 L. Ed. 2d 265 (1982), the United States Supreme Court held that the right to use state adjudicatory procedures is a constitutionally protected property interest. Since the Workers' Compensation Act establishes a comprehensive scheme for adjudicating workers' compensation claims, *Logan* makes it clear that the plaintiff's right to seek redress for her workers' compensation claim using Connecticut's adjudicatory procedures is a constitutionally protected interest. The dispositive issue, therefore, is what process is due to the plaintiff in seeking such redress.

"The fundamental requisite of due process of law is the opportunity to be heard. . . . The hearing must be at a meaningful time and in a meaningful manner. . . . [T]hese principles require that a [party] have . . . an effective opportunity to defend by confronting any

adverse witnesses and by presenting his own arguments and evidence orally." (Internal quotation marks omitted.) *Giaimo* v. *New Haven*, supra, 257 Conn. 512.

"The United States Supreme Court [has] set forth three factors to consider when analyzing whether an individual is constitutionally entitled to a particular judicial or administrative procedure: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. . . . [T]he degree of potential deprivation that may be created by a particular decision is a factor to be considered in assessing the validity of any administrative decision-making process. . . . Due process analysis requires balancing the government's interest in existing procedures against the risk of erroneous deprivation of a private interest inherent in those procedures." (Citations omitted; internal quotation marks omitted.) Id., 511–12.

Prior to beginning our due process analysis, we review the statutory scheme for discontinuing or reducing workers' compensation benefits, as set forth in § 31-296. Thereafter, we consider the factors bearing upon the constitutional adequacy of these procedures. Section 31-296 (b) provides in relevant part: "Before discontinuing or reducing payment on account of total or partial incapacity . . . the employer or the employer's insurer, if it is claimed by or on behalf of the injured employee that such employee's incapacity still continues, shall notify the commissioner and the employee, by certified mail, of the proposed discontinuance or reduction of such payments. Such notice shall specify

the reason for the proposed discontinuance or reduction and the date such proposed discontinuance or reduction will commence. No discontinuance or reduction shall become effective unless specifically approved in writing by the commissioner. The employee may request a *hearing* on any such proposed discontinuance or reduction not later than fifteen days after receipt of such notice. . . ." (Emphasis added.)

The form notice set forth in § 31-296, as amended by No. 07-80 of the 2007 Public Acts, provides that the pretermination hearing an employee can seek if he disputes a proposed discontinuance or reduction of benefits is an informal hearing.[11] The informal hearing "should be held as soon as possible after the claimant has objected to the Form 36." *Anguish* v. *TLM, Inc.*, 14 Conn. Workers' Comp. Rev. Op. 195, 197, appeal dismissed, Appellate Court, Docket No. 15034 (October 25, 1995), cert. denied, 235 Conn. 934, 667 A.2d 1271 (1995). "While evidence is not taken at an informal hearing . . . the employer/insurer has the burden of proof and must submit documents . . . in support of the discontinuance or reduction. Thereafter, the burden shifts to the injured worker who should be prepared to present competent medical evidence (usually by medical reports) that support the contest of the Form

---

[11] Specifically, General Statutes § 31-296 (c) provides that the notice of intention to discontinue or reduce payments should comply substantially with the following: "IMPORTANT

"STATE OF CONNECTICUT WORKERS' COMPENSATION COMMISSION

"YOU ARE HEREBY NOTIFIED THAT THE EMPLOYER OR INSURER INTENDS TO REDUCE OR DISCONTINUE YOUR COMPENSATION PAYMENTS ON       (date) FOR THE FOLLOWING REASONS:

"If you object to the reduction or discontinuance of benefits as stated in this notice, YOU MUST REQUEST A HEARING NOT LATER THAN 15 DAYS after your receipt of this notice, or this notice will automatically be approved.

"To request an Informal Hearing, call the Workers' Compensation Commission District Office in which your case is pending.

"Be prepared to provide medical and other documentation to support your objection. For your protection, note the date when you received this notice."

36. The [commissioner] will weigh the evidence and either approve or disallow the discontinuance or reduction." A. Sevarino, Connecticut Workers' Compensation After Reforms (Centennial Ed. 2012) § 5.16.10, p. 715. "The commissioner should render his or her decision at the hearing or shortly thereafter by providing a copy of the ruling to each party, as per a February 14, 1994 directive of Chairman Jesse M. Frankl. . . . [T]he commissioner should normally stop payments effective on the date the Form 36 was filed." (Internal quotation marks omitted.) *Anguish* v. *TLM, Inc.*, No. 3437 CRB 7-96-9 (January 20, 1998), aff'd, 53 Conn. App. 241, 728 A.2d 1165, cert. denied, 250 Conn. 910, 734 A.2d 985 (1999).

A decision rendered after an informal hearing "is not an appealable decision, as [an informal hearing] does not create a record that can be reviewed. . . . Instead, the initial ruling on a Form 36 may be challenged at a subsequent formal [evidentiary] hearing, at which the previous ruling has no precedential weight. The issue is tried de novo." (Citation omitted; emphasis omitted.) *Brinson* v. *Finlay Bros. Printing Co.*, 77 Conn. App. 319, 327, 823 A.2d 1223 (2003); see also *DeMartino* v. *L.G. DeFelice, Inc.*, No. 3524, CRB 04-97-01 (February 18, 1998), p. 4 n.2. "Any [o]rder approving or disapproving a Form 36 at the informal hearing . . . will not have a transcript of the proceedings or a record from which an appeal may be taken to the [board]. Without a transcript or exhibits, the [board] is absent a record and cannot consider the appeal pursuant to [General Statutes §] 31-301 as the matter is not ripe for appellate review. Should a [claimant] file such an appeal without a transcript or record [he or she] is going to receive a remand order from the [board] dismissing the appeal and remanding the matter back to the [commissioner] who issued the [o]rder to hold a [f]ormal hearing, which

then will produce a transcript and record."[12] (Emphasis omitted.) A. Sevarino, supra, § 5.16.10, p. 716; see also *Chung* v. *TTM Technologies, Inc.*, No. 5675, CRB 2-11-8 (August 23, 2011). "[The board has] repeatedly explained that after the approval of a Form 36 at an informal hearing, a claimant has the opportunity to present evidence and testimony at a formal hearing, which normally would be held shortly after the Form 36 was approved." (Internal quotation marks omitted.) *Brinson* v. *Finlay Bros. Printing Co.*, No. 4307, CRB 1-00-10 (November 1, 2001), aff'd, 77 Conn. App. 319, 823 A.2d 1223 (2003). If the formal hearing results in an adverse decision, the claimant is entitled to appeal to the board. See General Statutes § 31-301. A claimant whose benefits are terminated is awarded full retroactive relief if he ultimately prevails in his challenge of a Form 36. See *Anguish* v. *TLM, Inc.*, supra, No. 3437 CRB 7-96-9.

The plaintiff contends that due process requires the commissioner to conduct an evidentiary hearing, at which she has the opportunity to cross-examine adverse witnesses, prior to approving the discontinuance of compensation payments. The parties agree that *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976), is the correct focal point for our due process analysis. Applying the *Mathews* test to the present case, we conclude that the § 31-296 pretermination safeguards and full posttermination remedies comport with the requirements of due process.

First, the private interest affected in the present case is the uninterrupted payment of the plaintiff's workers' compensation benefits pending a final decision on the

---

[12] We note, however, that "[our appellate courts have] jurisdiction to review a constitutional challenge on appeal from the decision of an administrative agency, despite the agency's lack of jurisdiction to rule on the constitutional claim." *St. Paul Travelers Cos.* v. *Kuehl*, 299 Conn. 800, 818, 12 A.3d 852 (2011).

employer's request to discontinue benefits. Pursuant to our statutes, the plaintiff is entitled to full retroactive relief if she ultimately prevails at the posttermination formal hearing or thereafter on appeal. While we do not diminish the significance of the plaintiff's interest in the timely receipt of workers' compensation benefits to which she is entitled, we recognize that the availability of post-termination remedies lessens the "degree of potential deprivation." Id., 341.

We are aware of only one instance in which the United States Supreme Court held that due process requires an evidentiary hearing prior to the deprivation of statutorily-created benefits. Id., 340. In *Goldberg* v. *Kelly*, 397 U.S. 254, 266–71, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970), the court held that welfare payments may not be terminated without first affording the claimant an evidentiary hearing. In *Mathews*, however, the court declined to extend its holding in *Goldberg* to the termination of social security disability benefits, distinguishing recipients of such benefits from welfare recipients based upon the latters' extreme financial need. *Mathews* v. *Eldridge*, supra, 424 U.S. 340–41. The court thus held that because "[e]ligibility for disability benefits . . . is not based upon financial need," and, since disability benefit claimants might have other means of subsistence, the claimants were not entitled to a pretermination hearing. Id., 340–41.

By the foregoing logic, the present case is analogous to *Mathews* rather than to *Goldberg*. As with social security disability benefits, a claimant's eligibility for workers' compensation benefits is not based upon financial need.[13] Although "there is little possibility that

---

[13] The Workers' Compensation Act "provides for two unique categories of benefits—those designed to compensate for loss of earning capacity and those awarded to compensate for the loss, or loss of use, of a body part. . . . Total or partial incapacity benefits fall into the first category. . . . Disability benefits, also referred to as specific indemnity awards or permanency awards, fall into the second category." (Citations omitted; internal quotation marks omitted.) *Marandino* v. *Prometheus Pharmacy*, 294 Conn.

[an injured worker] will be able to find even temporary employment to ameliorate the interim loss," a claimant may have other resources to sustain herself during the post-termination period or may qualify for public assistance. *Mathews* v. *Eldridge*, supra, 424 U.S. 341–42. Accordingly, considering the particular private interest that will be affected, we can discern no reason to depart from the ordinary principle, established by the decisions of the United States Supreme Court, that something less than an evidentiary hearing is sufficient to protect an employee's due process rights with respect to the receipt of workers' compensation benefits prior to the discontinuation of such benefits. See id., 343.

Second, we consider "the risk of an erroneous deprivation of [the plaintiff's interest] through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Id., 335. This second element of the *Mathews* test involves consideration of the risk that the commissioner improperly will approve a discontinuance or reduction of workers' compensation benefits pursuant to § 31-296 in the absence of a pretermination evidentiary hearing. The risk of an improper deprivation is low based upon the nature of the commissioner's inquiry at an informal hearing, the procedural safeguards in place before and during such a hearing, and the postdeprivation remedies available to the plaintiff.

Central to our evaluation of the permissibility of the § 31-296 procedures is the nature of the relevant inquiry. See id., 343. At the informal hearing, the employer must present competent medical evidence in support of the

564, 577, 986 A.2d 1023 (2010). A claimant's workers' compensation benefits are determined by the claimant's average weekly earnings during the period prior to disability, whether the benefit is for total incapacity, temporary partial incapacity or permanent partial disability, and other factors not directly related to financial need. See General Statutes §§ 31-307, 31-308 and 31-308a.

proposed discontinuance or reduction of benefits. To challenge a Form 36 successfully, and thus remain eligible for workers' compensation benefits, a claimant must present evidence, usually in the form of medical reports, to contest the Form 36.[14] Therefore, a medical assessment of the claimant's physical condition is required before the commissioner considers a discontinuation or reduction of benefits.

As the court noted in *Mathews*, a medical assessment is "more sharply focused and easily documented . . . than the typical determination of welfare entitlement. In the latter case, a wide variety of information may be deemed relevant, and issues of witness credibility and veracity often are critical to the decision making process." Id., 343–44. As in *Mathews*, however, a determination of whether to discontinue workers' compensation benefits "will turn, in most cases, upon routine, standard, and unbiased medical reports by physician specialists . . . concerning a subject whom they have personally examined. . . . [W]hile there may be professional disagreement with the medical conclusions, the specter of questionable credibility and veracity is not present. . . . To be sure, credibility and veracity may be a factor in the ultimate disability assessment in some cases. But procedural due process rules are shaped by the risk of error inherent in the truthfinding process as applied to the generality of cases, not the rare exceptions." (Citations omitted; internal quotation marks omitted.) Id., 344. In the present case, the determinations of the commissioner, therefore, generally will be reliable because they are made on the objective basis of written documentation.

---

[14] Here, because the defendant had alleged that the plaintiff had reached maximum medical improvement, the plaintiff was required to submit competent medical evidence demonstrating that she, in fact, had not reached maximum medical improvement.

Under § 31-296, several procedural safeguards protect against the possibility of improper discontinuances or reductions of benefits. These safeguards include requiring the employer or insurer to "notify the commissioner and the employee, by certified mail, of the proposed discontinuance or reduction of [benefits]." General Statutes § 31-296 (b). Moreover, the employer or insurer must "specify the reason for the proposed discontinuance or reduction and the date such proposed discontinuance or reduction will commence. No discontinuance or reduction shall become effective unless specifically approved in writing by the commissioner." General Statutes § 31-296 (b). "The employee may request [an informal] hearing on any such proposed discontinuance or reduction not later than fifteen days after receipt of such notice" and "[t]he commissioner shall not approve any such discontinuance or reduction prior to the expiration of the period for requesting a hearing or the completion of such hearing, whichever is later." General Statutes § 31-296 (b).

A further safeguard against erroneous deprivation of workers' compensation benefits at an informal hearing is a claimant's right to full access to the medical report filed in support of his employer's Form 36.[15] See General Statutes § 31-296 (c). This enables a claimant to prepare his argument adequately in order to respond at the informal hearing to the precise issues that will be relevant to the commissioner's determination. In addition, employers and insurers are subject to statutory penalties for unapproved terminations of workers' compensation benefits. See General Statutes § 31-296 (c)

---

[15] General Statutes § 31-296 (c) provides in relevant part: "The employer's or insurer's notice of intention to discontinue or reduce payments shall (1) identify the claimant, the claimant's attorney or other representative, the employer, the insurer, and the injury, including the date of the injury, the city or town in which the injury occurred and the nature of the injury, (2) include medical documentation that (A) establishes the basis for the discontinuance or reduction of payments . . . ."

(where commissioner finds employer discontinued or reduced payments without approval of commissioner, employer required to pay total amount of payments, interest on payments and attorney's fees incurred in relation to such discontinuance or reduction).

In *Mathews*, the United States Supreme Court explained that its decision in *Goldberg* "was based on the [c]ourt's conclusion that written submissions were an inadequate substitute for oral presentation because they did not provide an effective means for the [claimant] to communicate his case to the decisionmaker." *Mathews* v. *Eldridge*, supra, 424 U.S. 345. Even so, although the procedures at issue in *Mathews* did not afford social security disability claimants an opportunity for oral presentation to the decisionmaker prior to termination of their benefits, the court in *Mathews* found that such procedures satisfied the requirements of due process because the potential value of an evidentiary hearing, or even of an oral presentation to the decisionmaker, in protecting against an erroneous termination of benefits in such cases was substantially less than in cases such as *Goldberg*, which involved welfare benefits. *Mathews* v. *Eldridge*, supra, 337–39, 345. The court stated that the information critical to a determination regarding disability benefits, which is derived from medical sources, is "likely to be able to communicate more effectively through written documents than are welfare recipients or the lay witnesses supporting their cause." Id., 345.

In the present case, the challenged pretermination procedures established by § 31-296 afford claimants for workers' compensation benefits greater opportunities to defend themselves against proposed terminations of their benefits than those found sufficient to protect the due process rights of social security disability claimants in *Mathews*. Such opportunities include the right to argue orally at the informal hearing in opposition to the

proposed discontinuance or reduction of their benefits and the right to submit medical reports at the hearing to contest the employer's or insurer's Form 36.

As previously stated, the plaintiff was entitled to a reasonably prompt posttermination formal hearing at which she was permitted to cross-examine adverse witnesses and present evidence and testimony, but she declined to proceed with that hearing. Because the formal hearing would have produced an adequate record for review, the plaintiff could have appealed to the board and ultimately sought judicial review, if necessary. Accordingly, in light of the nature of the commissioner's inquiry, the procedural safeguards, and the postdeprivation remedies available, we conclude that the potential value of an evidentiary hearing prior to the termination or reduction of workers' compensation benefits is slight and the provisions of § 31-296 provide substantial protection against the risk of an erroneous deprivation of benefits sufficient to satisfy due process requirements.

Finally, we consider "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews* v. *Eldridge*, supra, 424 U.S. 335. In this final step of the *Mathews* analysis, we assess the public interest at issue and consider the societal costs that would be associated with requiring, as a matter of constitutional right, an evidentiary hearing upon demand in all cases prior to the discontinuance or reduction of workers' compensation benefits. See id., 348. Although "[f]inancial cost alone is not a controlling weight in determining whether due process requires a particular procedural safeguard," the public interest "in conserving scarce fiscal and administrative resources is a factor that must be weighed. At some point the benefit of an additional

safeguard to the individual affected by the administrative action and to society in terms of increased assurance that the action is just, may be outweighed by the cost." Id.

According to the board: "[It is] evident that the legislature intended that a claimant should stop receiving total disability benefits as soon as possible after his or her incapacity ceases, effective on the date the incapacity ceases." *Stryczek* v. *Mansfield Training School*, 14 Conn. Workers' Comp. Rev. Op. 32, 34 (1995). To encumber the § 31-296 proceedings with additional pretermination procedural requirements would significantly impair the function of the commissioner to resolve workers' compensation disputes expeditiously through an initial informal hearing, while only marginally benefitting claimants, who may pursue their claims in subsequent formal hearings and, if necessary, on appeal. Moreover, the public has an interest in ensuring that workers' compensation benefits are paid only to deserving claimants.

The most evident burden on the government's interests would be the incremental cost resulting from the increased number of evidentiary hearings and the increased expenditures of employers and their insurers in providing benefits to ineligible recipients pending benefit termination decisions. The additional procedural requirements would thus impede the important public policies of providing "a speedy, effective and inexpensive method for determining claims for compensation." (Internal quotation marks omitted.) *Stec* v. *Raymark Industries, Inc.*, 299 Conn. 346, 363, 10 A.3d 1 (2010). Therefore, because the public interests outweigh the plaintiff's need for additional pretermination procedures, we conclude that the procedures provided by § 31-296 are constitutionally sufficient.[16] Accordingly, applying the *Mathews* balancing test, we further

[16] Alternatively, the plaintiff claims that her "common law right to fundamental fairness in administrative hearings" affords her "an absolute right

conclude that the procedures provided by § 31-296, as applied to the present case, complied with the requirements of due process under the fourteenth amendment to the United States constitution.

The decision of the workers' compensation review board is affirmed.

In this opinion the other judges concurred.

to cross-examination in adjudicative administrative hearings." The plaintiff, however, fails to cite any authority or to provide adequate analysis in support of her claim that such a right must be afforded in a pretermination hearing, and we therefore decline to review it. See *State* v. *Orr*, 291 Conn. 642, 645 n.4, 969 A.2d 750 (2009).